# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| ALBERT WESTON, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No. 5:14-cv-00051-AKK-HGD |
| ) | |
| DEWAYNE ESTES, et al., ) | |
| ) | |
| Defendants ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Albert Weston, hereinafter referred to as the plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at Limestone Correctional Facility in Harvest, Alabama. The plaintiff names as defendants Warden DeWayne Estes and Health Services Administrator Karen Amborski.[1] The plaintiff seeks injunctive relief. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was

---

[1] Defendant Paul Thomas, Director of Medical Services, was previously dismissed from this action due to the plaintiff's failure to serve Thomas with a copy of the complaint within one hundred twenty (120) days after the complaint was filed. (Doc. 23). Additionally, Karen Amborski was incorrectly identified as Karen Ambroski in the complaint. (Doc. 1; Doc. 14-1 at 2, Amborski Aff.).

referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Procedural History

On June 18, 2014, the court entered an Order for Special Report, directing that a copy of the complaint in this action be forwarded to the defendants and requesting that they file a Special Report addressing the factual allegations of the plaintiff's complaint. (Doc. 7). The court advised the defendants that the Special Report should be accompanied by sworn statements and, if appropriate, would be considered as a motion for summary judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*Id*.). By the same order, the court advised the plaintiff that after he received a copy of the Special Report submitted by the defendants, he should file counter-affidavits if he wished to rebut the matters presented in the Special Report. (*Id*.).

On July 21, 2014, defendant Estes filed a Special Report. (Doc. 13). On August 7, 2014, defendant Amborski filed a Special Report. (Doc. 14). The defendants' Special Reports were accompanied by affidavits and/or medical documents. (Docs. 13, 14).

The court notified the plaintiff that the defendants' Special Reports would be construed as motions for summary judgment and he would have twenty (20) days to

respond by filing affidavits and other material if he chose. (Doc. 18). The court also advised the plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On December 29, 2014, the plaintiff filed a response and motion for summary judgment. (Doc. 21).

## II.  Summary Judgment Standard

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).

As the Eleventh Circuit Court of Appeals has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a *prima facie* case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III.  Summary Judgment Facts

Based on the foregoing summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the plaintiff.

The plaintiff is 81 years old. (Doc. 21 at 3, Weston Aff.). On October 19, 2011, the plaintiff underwent cataract repair on his right eye. (Doc. 14-1 at 12). On January 20, 2012, the plaintiff was seen by an ophthalmologist for a follow-up examination. (*Id.*). The plaintiff complained that he also needed surgery on his left eye because he could not see. (*Id.*).

As part of his yearly diabetic evaluation, the plaintiff was seen by an optometrist on May 7, 2013. (Doc. 14-1 at 10, 18).

On August 20, 2013, Certified Nurse Practitioner Shahla Poursaied examined the plaintiff during chronic care clinic. (Doc. 14-1 at 19). The plaintiff complained again that he could not see out of his left eye and requested surgery. (*Id.*). On the same date, Poursaied submitted a consultation request for the plaintiff to be evaluated for cataract surgery. (Doc. 14-1 at 17). Poursaied noted that the plaintiff had prior cataract surgery on his right eye in 2011 and that he complained of decreased vision in his left eye. (*Id.*). Poursaied also noted that the plaintiff had been seen by an optometrist on-site and the plaintiff had a "dense cataract 20/100 OS." (*Id.*).

On August 22, 2013, Dr. Hood denied Nurse Poursaied's request that the plaintiff be evaluated for surgery. (Doc. 14-1 at 17). Hood recommended that the plaintiff's eye condition be treated on-site. (*Id.*). Hood noted that the plaintiff's visual acuity was 20/40 OD and that the request would be reconsidered if the plaintiff's visual acuity OU became worse than 20/40. (*Id.*).

On December 9, 2013, the plaintiff submitted a health services request form in which he stated that he could not see out of his left eye. (Doc. 14-1 at 13). On December 10, 2013, medical staff completed an eye examination sheet for the

plaintiff to be seen by an optometrist. (Doc. 14-1 at 13, 16). However, the plaintiff did not show up for his appointment. (*Id*. at 16).

On April 23, 2014, Nurse Poursaied referred the plaintiff to an optometrist. (Doc. 14-1 at 7). The plaintiff was examined on May 16, 2014. (*Id*. at 15). The optometrist recommended surgery for the plaintiff's cataracts. (*Id*.).

On June 12, 2014, Nurse Poursaied submitted another request for the plaintiff to be evaluated for possible surgery due to his cataracts. (Doc. 14-1 at 14). Poursaied noted that on May 16, 2014, an optometrist evaluated the plaintiff on-site and recommended that the plaintiff have surgery. (*Id*.)

On June 13, 2014, Dr. Hood again denied Poursaied's request and noted that the plaintiff had 20/40 vision in one eye. (*Id*.). Dr. Hood recommended that the plaintiff's eye condition continue to be managed on-site. (*Id*.).

The plaintiff states:

> I was told that I had to go blind in both eyes completely and that even then if the surgery was done then I would only have the surgery done on one eye, and at a later time if necessary then the surgery would be done on the other eye.

(Doc. 21 at 3). The plaintiff complains that he suffers severe pain in his eyes and is completely dependent upon other inmates to read his mail to him and conduct legal research and writing. (Doc. 21 at 4).

For over a year, the plaintiff has complained to Warden Estes that he is having trouble with his eyesight. (Doc. 1 at 3). Defendant Estes defers all medical inquiries to Corizon staff members and has not taken part in any decisions related to any health care issues involving the plaintiff. (Doc. 13-1 at 3, Estes Aff.). Estes has no medical training, and all medical decisions pertaining to the plaintiff are made by Corizon employees.[2] (*Id*.).

The plaintiff has submitted several sick call slips and grievances to Karen Amborski in which he complains about his eyesight. (Doc 1 at 3). Karen Amborski is the Health Services Administrator ("HSA") at the Limestone Correctional Facility. (Doc. 14-1 at 2, Amborski Aff.). As HSA, defendant Amborski has no responsibility with regard to the diagnosis of an inmate's medical condition or the recommendation of medical treatment for any inmate. (Doc. 14-1 at 3, Amborski Aff.). Amborski does not have any responsibility with regard to the plaintiff's eye care. (*Id*.).

For relief, the plaintiff seeks an injunction directing the ADOC to provide him with cataract surgery. (Doc. 1 at 4).

---

[2] Defendant Estes states that he met with the plaintiff during one of Estes' tours of the facility. (Doc. 13-1 at 3, Estes Aff.). Estes states Weston informed him that he had cataracts in his left eye and the Health Care Unit would not help him. (*Id*.). Defendant Estes alleges he referred the plaintiff's claim to Karen Amborski and advised the plaintiff of the information Estes received from Amborski. (*Id*.). The plaintiff denies these events took place. (Doc. 21 at 3, Weston Aff.).

## IV.  Analysis

### A.  Eighth Amendment Medical Claims

The plaintiff alleges that defendants Estes and Amborski have failed to provide him with surgery for his cataracts and are, therefore, deliberately indifferent to his serious medical needs.  The United States Supreme Court has held that it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983.  *See Estelle v. Gamble*, 429 U.S. 97 (1976).  Indeed, the conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983.  *See Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977).  Mere negligence is insufficient to support a constitutional claim.  *See Fielder v. Brossard*, 590 F.2d 105 (5th Cir. 1979). Moreover, an accidental or inadvertent failure to provide medical care, or negligent diagnosis or treatment of a medical condition, does not constitute a wrong under the Eighth Amendment.  *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980). Additionally, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. at 106.  Neither will a mere difference of opinion between an inmate and the institution's medical staff as to treatment and diagnosis alone give rise to a cause of action under the

Eighth Amendment. *See Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976); *see also Estelle v. Gamble*, 429 U.S. 97, 106-08 (1976).

Deliberate indifference can be shown in a variety of ways. As the Eleventh Circuit Court of Appeals noted:

> Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference. Medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference. Additionally, when the need for medical treatment is obvious, medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference.

*Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (internal citations omitted).

An official also acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening or urgent medical condition that would be exacerbated by delay. *See Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1186-87 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994). Delay in access to medical treatment can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal citations omitted).

"In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1186-87 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002). A medical need is considered serious when delay results in an inmate suffering "a lifelong handicap or permanent loss." *Monmouth County Corr. Inst. Inmates v. Lorenzo*, 834 F.2d 326, 347 (3rd Cir. 1987). An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

**1. Defendant Estes**

Viewing the facts in a light most favorable to the plaintiff, the cataracts in his left eye constitute a serious medical need. However, the plaintiff has not shown that defendant Estes is deliberately indifferent to that need.

The plaintiff does not dispute that defendant Estes has no medical training and defers all medical inquiries to a Corizon staff member. (Doc. 13-1 at 3, Estes Aff.). Neither does the plaintiff dispute that defendant Estes has not taken part in any decisions related to the plaintiff's health care, including denying him cataract surgery. (*Id.*).

The undisputed medical records establish that medical personnel have made all decisions concerning the plaintiff's course of treatment. "[S]upervisory officials are entitled to rely on medical judgments by medical professionals responsible for prisoner care." *Williams v. Limestone County, Ala.*, 198 Fed. App'x 893, 897 (11th Cir. 2006). Prison officials are not under a duty to directly supervise medical personnel or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional deprivation. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) (in the absence of a reason to believe, or actual knowledge, that medical staff is administering inadequate medical care, non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) ("A prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing." (internal quotation marks and citation omitted)); *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Defendant Estes was entitled to rely on prison medical staff's professional judgment concerning

the plaintiff's medical condition and treatment and had no reason to intervene based on the undisputed facts presented herein.

Even assuming that defendant Estes exerted some type of authority over medical personnel responsible for the plaintiff's treatment, a prisoner cannot rely on doctrines of vicarious liability or *respondeat superior* in establishing liability pursuant to § 1983. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 90-92 (1978); *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995). Thus, liability for medical treatment provided to the plaintiff could attach to Estes only if he "personally participate[ed] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). "A single incident, or isolated incidents,

do not ordinarily satisfy this burden." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988).

As stated previously, the plaintiff does not allege that defendant Estes had any direct involvement with his medical treatment. Additionally, the plaintiff has not demonstrated a history of widespread abuse such that defendant Estes was on notice of the need to correct an alleged deprivation but failed to do so. Neither does the plaintiff allege facts to show that defendant Estes maintained customs or policies that resulted in violation of the plaintiff's constitutional rights nor that he directed medical personnel to act unlawfully or knew they would act unlawfully and failed to stop them from doing so.[3]

Accordingly, defendant Estes' motion for summary judgment on the plaintiff's Eighth Amendment medical claims is due to be granted and the claims are due to be dismissed. For the same reasons, the plaintiff's motion for summary judgment is due to be denied.

### 2. Defendant Amborski

The plaintiff does not dispute that defendant Amborski, as Health Services Administrator, is not responsible for providing medical treatment to inmates,

---

[3] Although the plaintiff claims he was told he had to go completely blind before being approved for surgery (doc. 21 at 3), he does not allege that this was a custom or policy attributable to defendant Estes.

including the plaintiff. (Doc. 14-1 at 2, Amborski Aff.). Neither does the plaintiff dispute that Amborski did not diagnose the plaintiff's eye condition nor has she recommended any course of treatment for the plaintiff. (*Id*. at 3). The undisputed medical record demonstrates that other medical personnel, not Amborski, made all decisions concerning the plaintiff's course of treatment, including denying him cataract surgery for his left eye.

To the extent the plaintiff complains that defendant Amborski did not sufficiently answer his grievances or denied his grievances altogether fail to state a cognizable constitutional claim under § 1983. A state inmate has no constitutionally-protected interest in an administrative grievance procedure. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) ("[A]n inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure."). Thus, denial of the plaintiff's grievances did not violate his constitutional rights. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that a prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983).

Based on the foregoing, defendant Amborski's motion for summary judgment on the plaintiff's Eighth Amendment medical care claims is due to be granted and the

claims are due to be dismissed. Additionally, the plaintiff's motion for summary judgment is due to be dismissed on the same grounds.[4]

## B. State Law Claims

To the extent the plaintiff alleges supplemental state law medical malpractice claims against defendants Estes and Amborski based on the same facts, such claims are subject to dismissal pursuant to 28 U.S.C. § 1367(c)(3) once all other claims over which this court has jurisdiction have been dismissed, as recommended herein.

## IV. Recommendation

Accordingly, for the reasons stated above, the magistrate judge **RECOMMENDS** that defendants Estes' and Amborski's motions for summary judgment on the plaintiff's Eighth Amendment medical claims be **GRANTED** and the claims be **DISMISSED WITH PREJUDICE**. The magistrate judge further **RECOMMENDS** that the plaintiff's motion for summary judgment be **DENIED**.

## V. Notice of Right to Object

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the

---

[4] The undersigned makes no determination concerning whether the plaintiff has been denied adequate medical care for his cataracts by other medical professionals at Limestone. The undisputed facts simply show that neither Estes nor Amborski were personally involved in denying the plaintiff cataract surgery.

clerk of this court.  **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.**  Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).

To challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  Any objections to the failure of the magistrate judge to address any contention raised in the complaint also must be included.  Objections not meeting the specificity requirement set out above will not be considered by a district judge.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.  Furthermore, it is not necessary for a party to repeat legal arguments in objections.   A copy of the objections must be served upon all other parties to the action.

On receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may

accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions. Objections not meeting the foregoing specificity requirement will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff and counsel for the defendants.

DATED this 24th day of June, 2015.

                                              _Harwell G. Davis_
                                              HARWELL G. DAVIS, III
                                              UNITED STATES MAGISTRATE JUDGE